UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY MCCALLUM,
ELAINE MCCALLUM,

                Plaintiffs,           CASE NO. 15-12676
                                    HON. DENISE PAGE HOOD

v.

STEPHEN GEELHOOD,
AMY MATELIC,
BRYAN WATSON,
STEVEN RILEY,
LARRY BARNETT,
DAVID HANSBERRY,
GREGORY TOURVILLE,
DETROIT, CITY OF,

                Defendants.

_____/

## ORDER DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#34]

## I.      BACKGROUND

### A. Procedural Background

Plaintiffs Anthony McCallum ("McCallum"), and wife, Elaine McCallum, commenced this action against Defendants City of Detroit and Detroit Police Officers Stephen Geelhood ("Geelhood"), Amy Matelic ("Matelic"), Bryan Watson ("Watson"), Steven Riley ("Riley"), Larry Barnett ("Barnett"), David Hansberry ("Hansberry"), and Gregory Tourville ("Tourville") in the Third

Judicial Circuit of Michigan on November 21, 2014.  (Doc # 1-1, Pg ID 6-12)
Defendants removed this case to federal court on July 29, 2015.  (Doc # 1)
Plaintiffs filed a First Amended Complaint, dated May 4, 2015, alleging the
following:   Wrongful Search and Seizure, Excessive Force, and Malicious
Prosecution under 42 U.S.C. § 1983 in violation of the Fourth Amendment to the
United States Constitution; Retaliation for Protected Speech under 42 U.S.C. §
1983 in violation of the First and Fourteenth Amendments to the United States
Constitution; Violation of Procedural and Substantive Due Process Rights to Fair
Treatment During Search, Seizure, Arrest, and Prosecution under 42 U.S.C. § 1983
in violation of the Fourth, Fifth, and Fourteenth Amendments; Municipal Liability
against the City of Detroit under 42 U.S.C. § 1983; and state law claims of
Trespassing, False Arrest, Assault and Battery, False Imprisonment, and Malicious
Prosecution.  (Doc # 1-1, Pg ID 78-87)

On March 8, 2016, Plaintiffs filed a Second Motion to Compel Discovery,
and the Court held a motion hearing on April 6, 2016.  The Court ordered that the
City of Detroit provide for in camera review unredacted documents responsive to
Plaintiffs' request to produce numbers 9, 14, 15, and 20.[1]  (Doc # 30)   The
documents have been provided to the Court for in camera review.

---

[1] Those requests are as follows:
9. Complete psychological testing records in the hiring process or otherwise of defendant
officers.

On July 8, 2016, Defendants filed the instant Motion for Summary Judgment. (Doc # 34) Plaintiffs filed a Response on July 26, 2016. (Doc # 35) Plaintiffs note in their Response that, after discovery, Plaintiffs stipulate to dismiss Defendants Tourville, Riley, and Barnett. Plaintiffs also stipulate to dismiss the state law claims against all Defendants. *Id*. at 563. According to Plaintiffs, they retain a Fourth Amendment Wrongful Search and Seizure claim against Matelic and Geelhood, an Excessive Force claim against Geelhood and Hansberry, and False Arrest and Malicious Prosecution claims against Watson. *Id.* Plaintiffs also retain their Municipal Liability claim against City of Detroit but request additional time to respond following the Court's in camera review of the thousands of documents related to City of Detroit's customs, policies, and practices. *Id.* at 586.

## B. Factual Background

McCallum and wife, Elaine McCallum, are suing City of Detroit and Detroit Police Officers Geelhood, Matelic, Watson, and Hansberry, members of a now defunct Detroit Police Narcotics Unit.

---

14. The complete citizen complaint files and/or IA investigation files for all prior complaints against any defendant officer.
15. The complete investigation files for all claims of excessive force/wrongful arrest for all defendants.
20. The investigation by this department or any other agency into allegations of thief [sic], corruption or misconduct in the Detroit Police Narcotics section. This shall include but not be limited to all internal memorandums, blue slips, documents through channels, incident reports, evidence logs, evidence technician files, photos, any and all recordings, statements, witness statements, endorsements, disciplinary reports, criminal warrant request and any and all other documents or materials.
(Doc # 15, Pg ID 245-46)

On April 26, 2013, Matelic swore to an Affidavit in support of a search warrant for Plaintiffs' residence on 16421 E. State Fair in Detroit. (Doc # 35-1, Pg ID 590-91) The Affidavit stated as follows.

> On 4/25/13, Affiant [Matelic], working with P.O. Geelhood received confidential information from a credible and reliable confidential informant regarding illegal narcotics, which are being stored and sold form 16241 E. State Fair, in the City of Detroit, and County of Wayne, Michigan. This confidential informant has provided information in the past regarding illegal narcotic trafficking on at least (3) prior occasions resulting in the confiscations of large amounts of cocaine, heroin, marijuana, firearms, and narcotic proceeds. Through the efforts of this confidential informant, P.O. Geelhood has cases pending in 36th District and 3rd Circuit Courts. The confidential informant stated that he/she was inside of 16421 E. State Fair with an unwitting person during the past 48 hours and observed large amounts of cocaine being sold and stored within. On 4/25/13, Affiant and P.O. Geelhood conducted surveillance at the above location. During the course of 35 minutes, Affiant observed (3) suspected buyers . . . on separate occasions, walk up and drive up to the location, knock, engage in a brief conversation with the above SELLER, and then enter 16421 E. State Fair. The suspected buyers would remain inside of the location for approximately 2-3 minutes and then leave the location. Affiant did not stop suspected buyers due to the fact it may compromise the investigation.

*Id.* at 590.

On April 26, 2013, Thirty-Sixth District Court Magistrate Judge Barthwell issued a search warrant for 16421 E. State Fair. *Id.* at 591. The search warrant also identified a "Suspected Seller" to be searched as a "B/M/35-40 5'10/180 with

4

a possible street name of 'Dre.'" *Id.* The search warrant also identified a "Dark

Blue Ford F150 Pick-up with rims" to be searched. *Id.*

On April 27, 2016, Matelic, Geelhood, Hansberry, and Watson executed the

search warrant. According to an Affidavit from McCallum, Geelhood and

Hansberry assaulted him as they approached his home before entering and

continued to assault him afterwards. (Doc # 35-3, Pg ID 616)  McCallum asserts

that Geelhood and Hansberry told him to get down, and although he complied, they

grabbed him, threw him on the porch, and stomped him on the back. *Id.*

Hansberry handcuffed him, and Hansberry and Geelhood picked him up, dragged

him into the house, and threw him on Elaine McCallum, who had been sleeping on

the couch. *Id.* at 616-17.  According to McCallum, he offered no resistance at any

point.  Geelhood and Hansberry continued to threaten him and Elaine McCallum

and when he asked Geelhood why he was threatening his wife and calling her a

"bitch," Geelhood grabbed McCallum by his shirt, yanked him up, asked him what

he was going to do about it, and again threw him back down on the couch.

McCallum claims that he suffered severe back injury from these assaults.

According to an Affidavit from Elaine McCallum, Geelhood handcuffed her.

(Doc # 35-7, Pg ID 636-37)  Geelhood put on the handcuffs so tightly that he

injured her wrists.  (Doc # 35-3, Pg ID 617)  Matelic then ordered Elaine

McCallum to the bathroom, pulled down her pants, told her to crouch, and did a strip search of her genital area.  (Doc # 35-7, Pg ID 637)

Geelhood and Hansberry arrested McCallum, and he was jailed until Elaine McCallum raised bail for his release.  (Doc # 35-5, Pg ID 618)  Officers did not find a Blue Ford F150 during the search, and McCallum did not match the description of "Dre" found in the search warrant.  McCallum was 46 years old, 5'4", and 165 pounds at the time.  (Doc # 35-3, Pg ID 615)  McCallum and Elaine McCallum note that during the raid, Geelhood and Hansberry kept asking them for Dre's location, clearly indicating that they knew McCallum was not Dre.  (*Id.* at 617; Doc # 35-7, Pg ID 637)

Officers claim to have found cocaine, marijuana, and a revolver with no serial numbers in the home.  (Doc # 35-10, Pg ID 647)  Watson testified to this at McCallum's preliminary examination.  (Doc # 35-3, Pg ID 618)  According to the Affidavit from McCallum, neither Elaine McCallum nor he had a gun or illegal drugs in their home.  *Id.* McCallum denies that they were in possession of or selling any illegal drugs.  *Id.* At the time of the search of their home, McCallum and Elaine McCallum both worked forty-hour work weeks—McCallum at his own auto repair shop, and Elaine McCallum as a custodian with EnviroClean.  (Doc # 35-3, Pg ID 616)  Plaintiffs claim that Watson fabricated the evidence of illegal drugs and an illegal firearm allegedly confiscated from McCallum's bedroom.

Plaintiffs note that Watson was subsequently convicted, along with Hansberry, for corruption involving phony seizure of narcotics, planting evidence, and other wrongful conduct.  (Doc # 35, Pg ID 568)  When asked at his deposition if he planted drugs or contraband at McCallum's home, Watson invoked the Fifth Amendment.  (Doc # 35-8, Pg ID 640)

McCallum was charged with possession of cocaine, possession of marijuana, felon in possession of a firearm, and felony firearm.  McCallum challenged the warrant, and a *Franks* hearing was held.  Matelic and Third Judicial Circuit Court Judge Hathaway engaged in the following exchange on August 6, 2013.

> THE COURT:  . . .  I'm looking at your affidavit here and it says affiant, that's you, working with PO Gill Hood [sic] received confidential information from a credible and reliable confidential informant regarding illegal narcotics, et cetera, et cetera.
> Now, as I understand your testimony, you did not actually receive the information from the informant?
> THE WITNESS: Correct.
> THE COURT: Your affidavit seems to suggest that you did receive it together with Gill Hood [sic].  But you mean to say Gill Hood [sic] got it from the informant and then gave it to you?
> THE WITNESS: Correct.  I must of-- I'm sorry.  I must of [sic] wrote it the confusing [sic].
> THE COURT: All right. You didn't have any direct conversation with the informant?
> THE WITNESS: Correct.

7

> THE COURT: Now, the, the informant here is described by you as
> credible and reliable, but what -- do you even know who the
> informant is? Did Gill Hood [sic] tell you who it was?
>
> THE WITNESS: No.
>
> THE COURT: He didn't tell you who it was. And so how do you
> know that the informant was credible and reliable?
>
> THE WITNESS: I guess I was -- I wanted to write it so that it looked
> like it came from him; that he's telling me he's credible and reliable.
> He has used him.

(Doc. # 35-2, Pg ID 606-07)  Matelic admitted she only observed three individuals

enter and exit McCallum's residence, and that she did not know what they did.  *Id.*

at 604.

> The court was troubled about the manner in which the affidavit was written.
>
> THE COURT: . . . I mean, and I hate to be melodramatic, but, you
> know, frankly this is a false affidavit. Now, maybe because of
> sloppiness. But the fact of the matter is the affidavit very clearly
> signals that this affiant, witness, is the person that had direct
> communication with the SOI. . . . Very clearly the affiant gave the
> impression in the affidavit that she had firsthand knowledge of this
> contact with the SOI. That's the way it was presented to the
> magistrate. That's my problem.

*Id.* at 610.  The court adjourned the *Franks* hearing and continued it on August 8,

2013.

> During the second hearing the court stated:
>
> THE COURT: Well, it turns out that based on Amy Matelic's
> testimony the last time we were on the record she actually did not

8

have any direct conversation with the informant. She doesn't have any experience with the informant. She implies in her affidavit that both she and Gil Hood [sic] received confidential information. Well, she doesn't imply that. She says it. And that turns out not to be the case. Only Gil Hood [sic] received it, and only Gil Hood [sic] had the experience. And Gil Hood [sic] is not a signatory to the affidavit. So the affidavit I mean really just cannot be ascribed as anything other than false in that respect. The, the affiant actually did not have the experience with the informant or conversations or, or any contact. Didn't have -- and actually said on the stand she didn't know who he was or she was. . . . I am going to strike the first two paragraphs of the affidavit, and that leaves only what was honestly averred in the affidavit. And that is that she and Gil Hood [sic] conducted surveillance on the above location. That but in and of itself clearly does not provide probable cause for the warrant.

(Doc. # 35-4, Pg ID623-25)  The court struck the warrant, suppressed all of the evidence gathered as a result thereof, and dismissed the case entirely. *Id.* at 625.

During his deposition on April 7, 2016, Geelhood testified that he did not recall anything other than gathering the information relevant to the search warrant and passing it on. (Doc # 35-6, Pg ID 631)  According to an Affidavit of Geelhood, dated May 19, 2016, he has reviewed the search warrant affidavit prepared by Matelic. (Doc # 29-4; Pg ID 454)  Geelhood now asserts that all of the information contained in the search warrant affidavit was true and accurate and was provided by him to Matelic. *Id.*

## II.    ANALYSIS

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.*  Although the Court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

10

all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material.  *Anderson*, 477 U.S. at 248.

### B. Section 1983 Claims

#### 1. Qualified Immunity

Matelic, Geelhood, Hansberry, and Watson argue that they are entitled to qualified immunity on the constitutional claims against them.  Plaintiffs respond that there are genuine issues of material facts to preclude summary judgment.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A government official will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the action at issue was lawful]; but if the officer of reasonable competence could disagree on this issue, immunity should be recognized.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceeding so that the costs and expenses of trial are avoided where the defense is dispositive.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of

litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The first inquiry to determine qualified immunity is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The "clearly established" rights allegedly violated by the officials cannot be considered at an abstract level, but must be approached at a level of specificity: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court.

## 2. Wrongful Search and Seizure Claim Against Matelic and Geelhood

Matelic and Geelhood argue that they did not violate Plaintiffs' constitutional right to be free from illegal search and seizure because the search was based on true and accurate information in a search warrant and probable cause. Matelic argues that she could rely on the information transmitted to her by Geelhood, a fellow officer. Geelhood argues that he had both personal knowledge of the illegal activity and contact with the confidential informant, which established probable cause.

Plaintiffs argue that Matelic and Geelhood violated their constitutional right to be free from illegal search and seizure. Matelic provided false information in an affidavit to obtain the search warrant. Geelhood read the affidavit, and by reasonable inference, knew that it was false because he knew that Matelic had no first-hand information from the confidential informant. Plaintiffs further argue that Matelic had no reason to strip search Elaine McCallum given that she was handcuffed, not resisting, and had not been identified as even a possible suspect in any warrant.

"The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). The language of the Warrant Clause takes

13

the affiant's good faith as its premise: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. Amend IV; *Franks*, 438 U.S. at 164. The information put forth must be believed or appropriately accepted by the affiant as true. *Franks*, 438 U.S. at 165. "Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Id.* (internal citations omitted).

An officer can be liable under Section 1983 for an illegal search or seizure when the officer "knowingly and deliberately, or with a reckless disregard for the truth" makes "false statements or omissions that create a falsehood" and "such statements or omissions are material, or necessary, to the finding of probable cause." *Peet v. City of Detroit*, 502 F.3d 557, 570 (6th Cir. 2007) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)). An assertion is made with reckless disregard when, after viewing all the evidence, the affiant entertained serious doubts as to the truth of her statements or had obvious reasons to doubt the accuracy of the information reported. *Peet*, 502 F.3d at 571 n.3. Omissions are made with reckless disregard if an "officer withholds 'a fact in his ken' that 'any reasonable person would have known . . . is the kind of thing the judge would wish to know.'" *Id.* (quoting *Wilson*, 212 F.3d at 788).

14

The Court need not address Matelic's arguments again here, since the Court enters an Order finding:  (1) that there is no question of material fact that Matelic violated Plaintiffs' constitutional right because Matelic demonstrated a reckless disregard for the truth when she wrote the affidavit that was the basis of the search warrant; (2) that the right not to be searched and seized without probable cause based on a warrant obtained through false or misleading statements was clearly established; and (3) that Matelic is not entitled to qualified immunity.

Matelic has not yet addressed the allegation that she illegally strip searched Elaine McCallum.  It is not clear whether this is a disputed issue of fact.  Matelic's Preliminary Complaint Report indicates that she was assigned to the "outside security position" for the execution of the search warrant and assisted with searching the dwelling once it was secured.  (Doc # 29-3, Pg ID 439)  Her report does not mention searching Elaine McCallum.  *Id.*  If the strip search did indeed occur, it was plainly a violation of Elaine McCallum's constitutional right to be free of unreasonable searches.  Matelic recklessly disregarded the truth when she wrote the search warrant affidavit, so she did not have probable cause to search the home.  A jury could find that she did not have probable cause to strip search Elaine McCallum where Elaine McCallum was not identified in any way on the search warrant, and where she was handcuffed sitting on the couch.  There is no evidence that Elaine McCallum was suspected of having committed a crime or concealing

15

evidence.  She was not arrested following the search.  Matelic is not entitled to qualified immunity as it relates to this claim.

The Court finds that there is a genuine issue of material fact that precludes summary judgment as to Geelhood.  During his deposition on April 7, 2016, Geelhood testified that he did not recall anything other than gathering the information relevant to the search warrant and passing it on.  (Doc # 35-6, Pg ID 631)  According to his later Affidavit, dated May 19, 2016, he has reviewed the search warrant affidavit prepared by Matelic, but the Affidavit does not specify when he reviewed it.  (Doc # 29-4; Pg ID 454)  Geelhood may be liable for an illegal search and seizure if he reviewed the search warrant affidavit prepared by Matelic and recklessly disregarded the truth in proceeding with the search and seizure, as Plaintiffs claim.  In that case, Geelhood would have known that Matelic did not receive any information directly from the informant and did not even know anything about the informant.  In that case, Geelhood would not be entitled to qualified immunity, since it is clearly established that falsifying facts to establish probable cause and relying on warrants obtained through false or misleading statements is unconstitutional. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).  The Court denies summary judgment as to the wrongful search and seizure claim.

### 3.  Excessive Force Claim Against Geelhood and Hansberry

Defendants' Motion for Summary Judgment does not address Geelhood's or Hansberry's arguments as to the excessive force claim.

Plaintiffs argue that Geelhood and Hansberry violated their constitutional right to be free from excessive force.  It is alleged that Geelhood and Hansberry used gratuitous force against Plaintiffs when they did not have a warrant to search them, Plaintiffs were presenting no threat to the safety of the officers, and Plaintiffs were not resisting or attempting to flee from the officers in any way.

Where a plaintiff complains of excessive force in the course of an arrest, investigatory stop, or other seizure, the claim must be analyzed under the Fourth Amendment's objective reasonableness standard, not under a substantive due process standard.  *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  The proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer

on the scene, rather than with the 20/20 vision of hindsight." *Id.* The Supreme

Court has further explained:

> The calculus of reasonableness must embody allowance for the fact
> that police officers are often forced to make split-second judgments—
> in circumstances that are tense, uncertain, and rapidly evolving—
> about the amount of force that is necessary in a particular situation.

*Id.* at 396-97. The question for the Court is "whether the officers' actions are

'objectively reasonable' in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation." *Id.* at 397. This test

"requires a 'careful balancing' of the individual interest in being free from

unreasonable seizures and the important governmental interest in protecting the

safety of its peace officers and the public." *Williams v. City of Grosse Pointe

Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396).

In his deposition, Geelhood testified that he does not recall any physical

contact with Plaintiffs during the raid. He testified that he only has a vague

recollection of McCallum being out front when the raid team first approached.

(Doc # 31-3, Pg ID 481, 484) Turning to the police records, Geelhood's

Preliminary Complaint Record indicates that he made entry into an open front door

and assisted with the securing and searching of the dwelling. (Doc # 29-3, Pg ID

437) His report does not mention any use of force. Hansberry's Preliminary

Complaint Record indicates that he "observed" McCallum on the porch as the raid

team approached, made an unforced entry into the open front door, and assisted

18

with securing and searching the dwelling. *Id.* at 440. His report does not mention the use of force.

According to McCallum, Geelhood and Hansberry grabbed him, threw him on the porch, and stomped him on the back after McCallum complied with their directive to get down. (Doc # 35-3, Pg ID 616) After Geelhood and Hansberry handcuffed McCallum, they picked him up, dragged him into the house, and threw him on Elaine McCallum. *Id.* at 616-17. Geelhood later grabbed McCallum by his shirt, yanked him up, and again threw him back down on the couch. According to McCallum he was entirely compliant, offered no resistance at any point, and did not attempt to flee. *Id.* at 617-18. According Elaine McCallum, Geelhood handcuffed her. (Doc # 35-7, Pg ID 636-37) Geelhood put on the handcuffs so tightly that he injured her wrists. (Doc # 35-3, Pg ID 617)

Regarding the first *Graham* factor, the severity of the crime at issue, Geelhood may or may not have had probable cause to execute the search warrant, as discussed above. Likewise, Hansberry may or may not have had a good faith belief that the raid team was executing a search warrant pursuant to a truthful affidavit. The crime at issue was the selling of large amounts of cocaine from McCallum's home. Because of the severity of the crime at issue, the officers would have had reason to use the forcible means reasonably necessary to execute the search warrant. *See Graham*, 490 U.S. at 396.

Regarding the second *Graham* factor, whether the suspect poses an immediate threat to the safety of the officers or others, viewing the evidence in the light most favorable to Plaintiffs, they complied with the officers' directives, were unarmed, and did not in any way threaten the officers. The officers continued to assault McCallum after he was handcuffed even though he did not resist the officers at any point. This factor weights in favor of Plaintiffs because there is no governmental interest in continuing to use force after a suspect has already been neutralized. *See McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (finding that the need for application of force is nonexistent where a suspect is handcuffed and not trying to escape or hurt anyone).

Regarding the third *Graham* factor, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, viewing the evidence in the light most favorable to Plaintiffs, they never resisted the officers or tried to escape. This factor weights in favor of Plaintiffs because it is unconstitutional to use force against a suspect who is not resisting and poses no flight risk. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004).

Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that there is a genuine issue of material fact that precludes summary judgment as to Geelhood and Hansberry. A jury could reasonably find that Geelhood's and Hansberry's use of force violated Plaintiffs' Fourth Amendment

right to be free from excessive force.   That right was clearly established, so Geelhood and Hansberry are not entitled to qualified immunity.  *See Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) ("there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others"). The Court denies Defendants' Motion for Summary Judgment as to the excessive use of force claim.

### 4.  False Arrest Claim Against Watson

Watson argues that McCallum was arrested because he was in possession of illegal drugs and an illegal firearm.  McCallum argues that Watson fabricated the evidence that formed the basis of his arrest.

Proof of the actual existence of probable cause is an absolute bar to a Section 1983 action for unlawful arrest.  *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988).  Where probable cause to arrest exists, no constitutional violation occurs, and the Court does not even reach the issue of qualified immunity.  *Id.* Probable  cause to arrest has been defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person or one of reasonable caution, in believing in the circumstances shown that the suspect has committed, is committing, or is about to commit an offense."  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).   Probable cause requires merely the

probability of criminal activity, and need not show a "prima facie" case of the crime. *Illinois v. Gates*, 462 U.S. 213 (1983). "In a § 1983 action, the existence of probable cause is a question of fact." *Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006). Whether probable cause exists is determined by the totality of the circumstances. *Id.* at 238. A valid arrest based upon a then-existing probable cause is not vitiated if the suspect is later acquitted or the charges are dismissed. *Criss*, 867 F.2d at 262. An officer "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Id.* at 263. "The Constitution does not guarantee that only the guilty will be arrested. If it did, Section 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Id.*

McCallum was charged with possession of cocaine, possession of marijuana, felon in possession of a firearm, and felony firearm. Police records indicate that Watson placed McCallum under arrest after searching his bedroom and finding cocaine, marijuana, and a loaded illegal firearm in McCallum's dresser drawer, which also contained a letter from the IRS to McCallum. (Doc # 35-10, Pg ID 647) According to the Affidavit from McCallum, he did not have any gun or any narcotics in his house. McCallum asserts that Watson was subsequently convicted for corruption involving phony seizures of narcotics, planting evidence, and other

22

wrongful conduct.  When asked at his deposition if he planted drugs or contraband at McCallum's home, Watson invoked the Fifth Amendment.  (Doc # 35-8, Pg ID 640)

Viewing the evidence in the light most favorable to McCallum, the Court finds that there is a genuine issue of material fact that precludes summary judgment as to Watson.  Accepting McCallum's allegations, Watson deliberately fabricated evidence of illegal narcotics and an illegal firearm.  A reasonable officer would have known that fabricating evidence violates an individual's constitutional rights.  *See Gregory*, 444 F.3d at 744.  The Court denies Defendants' Motion for Summary Judgment as to the false arrest claim.

### 5.  Malicious Prosecution Claim Against Watson

Defendants' Motion for Summary Judgment does not put forth any argument related to the malicious prosecution claim against Watson.  McCallum argues that Watson fabricated evidence that led to McCallum's prosecution.

The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which is entirely distinct from that of a false arrest claim, since a malicious prosecution claim remedies detention accompanied by wrongful institution of legal process.  *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).  The plaintiff must show four elements to succeed on a malicious prosecution claim based on the Fourth

23

Amendment: (1) that a criminal prosecution was initiated against the plaintiff, and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty, apart from the initial seizure; and (4) that the criminal proceeding was resolved in the plaintiff's favor. *Id.*

Regarding the first element, the record shows that a criminal prosecution was initiated against McCallum, and this is not in dispute. According to the Affidavit from McCallum, Watson testified at his preliminary examination and claimed to have found a gun and narcotics at McCallum's home. (Doc # 35-3, Pg ID 618) Regarding the second element, as discussed above, viewing the facts in the light most favorable to McCallum, a jury could conclude that Watson manufactured probable cause for the criminal prosecution where none existed by deliberately fabricating evidence. Regarding the third element, McCallum alleges that he was jailed until his wife was able to raise bail. *Id.* Regarding the fourth element, McCallum has shown that all charges against him were eventually dismissed with prejudice. (Doc # 35-5, Pg ID 627)

Viewing the evidence in the light most favorable to the McCallum, a jury could find that McCallum satisfies the required elements of a malicious prosecution claim, and the Court finds that there is a genuine issue of material fact

that precludes summary judgment as to Watson. If McCallum's allegations are true, then Watson could be found liable and would not be entitled to qualified immunity because a reasonable officer would have known that fabricating evidence of illegal narcotics and an illegal firearm, and then testifying falsely about the fabricated evidence at a preliminary examination, would violate Plaintiff's clearly established right to be free from continued detention without probable cause. *See Gregory*, 444 F.3d at 749-50. The Court denies Defendants' Motion for Summary Judgment as to the malicious prosecution claim.

### C. Municipal Liability Claim Against City of Detroit

City of Detroit argues that discovery is now closed, and Plaintiffs have not identified any unconstitutional custom, policy, or practice that led to any deprivations of Plaintiffs' constitutional rights.

According to an Affidavit from Counsel for Plaintiffs, Plaintiffs requested discovery from the City of Detroit related to the allegedly corrupt narcotics team led by Hansberry in order to establish their custom, policy, and practice claims against City of Detroit. (Doc # 35-11, Pg ID 650) Defendants objected and claimed privilege. *Id*. at 652. When Plaintiffs moved to compel discovery, Defendants requested an in camera review by the Court, which is ongoing. *Id.* Plaintiffs request an extension of time to respond to City of Detroit's Motion for

Summary Judgment until the disputed records are provided to Counsel and Plaintiffs and Counsel have the opportunity to review them. *Id.*

The Court grants Plaintiffs' request for additional time to respond pending completion of the in camera review of documents.

## III.   CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Doc # 34) is DENIED IN PART as to the Wrongful Search and Seizure claim against Matelic and Geelhood, Excessive Force claim against Geelhood and Hansberry, False Arrest claim against Watson, and Malicious Prosecution claim against Watson.

IT IS FURTHER ORDERED that Plaintiffs' request for an extension of time to respond to City of Detroit's Motion for Summary Judgment as to the Municipal Liability Claim until Counsel for Plaintiffs and Plaintiffs have the opportunity to review the disputed records following the Court's in camera review is GRANTED.

IT IS FURTHER ORDERED that Defendants Gregory Tourville, Steven Riley, and Larry Barnett are DISMISSED from this action as stipulated to by Plaintiffs.

IT IS FURTHER ORDERED that all state law claims (Count III) against all Defendants are DISMISSED as stipulated to by Plaintiffs.

As discussed above, the Court also enters a separate Order granting summary judgment in favor of Plaintiff McCallum as to the Wrongful Search and Seizure claim against Matelic.  Accordingly, only the following claims remain:  a Fourth Amendment Wrongful Search and Seizure claim against Geelhood, an Excessive Force claim against Geelhood and Hansberry, a False Arrest claim against Watson, a Malicious Prosecution claim against Watson, and a Municipal Liability claim against City of Detroit.

Dated:  March 31, 2017                              s/Denise Page Hood
                                                    Chief, U.S. District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2017, by electronic and/or ordinary mail.


                                                    s/LaShawn R. Saulsberry
                                                    Case Manager